**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAW STORY, <br><br>         *Plaintiff*, <br><br>    v. <br><br> U.S. DEPARTMENT OF DEFENSE, *et al.*, <br><br>         *Defendants*. | Civil Action No. 23-2514 (LLA) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the court on a motion for summary judgment by Defendants, the U.S. Department of Defense and U.S. Department of the Navy, ECF No. 16, and a cross-motion for summary judgment by Plaintiff, Raw Story, ECF No. 18.  Raw Story, a news website, claims that Defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by unlawfully withholding certain records pertaining to the investigation of Jordan Duncan, a former Marine and alleged neo-Nazi.  ECF No. 1 ¶¶ 1-2.  Upon consideration of the motions and supporting documentation, the court will deny Defendants' motion for summary judgment and grant Plaintiff's cross-motion for summary judgment.

### I.     Background

In May 2023, Jordan Green, a reporter with Raw Story, which is "an online news organization that has published extensively on extremism in the military," ECF No. 18-1, at 4, submitted a FOIA request on behalf of Raw Story to the U.S. Department of the Navy.  In it, Raw Story sought (1) "memoranda, emails, correspondence or other documents referencing classified materials found on the hard drive of Jordan Duncan following his arrest in or around Boise, Idaho on or about  Oct. 20, 2020"; (2) "memoranda, emails, correspondence or other documents

referencing an investigation into potential violations of 18 U.S.C. §§ 641, 793(e) and (g) through a review of devices seized from Mr. Duncan"; and (3) "confirmation that the investigation into potential violations of 18 U.S.C. §§ 641, 793(e) and (g) by Mr. Duncan is closed or remains open." ECF No. 16-3, at 2.

In early June 2023, the Naval Criminal Investigative Services ("NCIS") issued a *Glomar* response, "neither confirm[ing] nor deny[ing] the existence of [such] records."  ECF No. 16-4, at 1; *see Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) ("In . . . a [*Glomar*] response the government neither confirms nor denies the existence of the requested records."). NCIS explained that pursuant to FOIA Exemptions 6 and 7(C), it was NCIS policy "not to disclose personal information in law enforcement records [for which the disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  ECF No. 16-4, at 1.  NCIS further explained that before it could "begin to search for responsive records," Raw Story had to "first submit a written authorization (privacy waiver) from Mr. Duncan," "provide proof that [Mr. Duncan] is deceased," or "demonstrate that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records."  *Id.*

Within a week, Raw Story appealed the denial because, in its view, the "public interest in disclosure outweigh[ed] [Mr. Duncan's] personal privacy interest."  ECF No. 16-5, at 1.  Raw Story explained that "a federal prosecutor ha[d] stipulated that investigators uncovered what 'appeared to be classified material' on a hard drive belonging to Mr. Duncan, an avowed neo-Nazi who was trained as a Russian linguist during his service in the [Marines]," and that over two years earlier, the same prosecutor had informed a judge on the U.S. District Court for the Eastern District of North Carolina that "a review was underway to determine whether any violations of federal law

for offenses related to the handling of classified materials took place." *Id.* Raw Story argued that these statements "raise[d] serious concerns about the possibility that Mr. Duncan turned over classified materials critical to national security to a foreign [adversary]" or "misused classified materials [to harm] the United States by fomenting internal division and undermining democratic institutions," and that the "American people deserve to know the extent to which Mr. Duncan compromised national security, if at all." *Id.*

In July 2023, the Navy's General Litigation Division upheld the *Glomar* response, concluding that any records, should they exist, would fall within FOIA Exemption 6 as "a clearly unwarranted invasion of personal privacy" or Exemption 7(C) as "records of information compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." ECF No. 16-6, at 2 (first quoting 5 U.S.C. § 552(b)(6), then quoting 5 U.S.C. § 552(b)(7)(C)). The Navy determined that Raw Story's alleged public interest did not overcome Mr. Duncan's "legitimate privacy interest." *Id.* at 3; *see id.* at 4 ("[Y]ou state no public interest that would outweigh the subject's privacy interest in nondisclosure of the requested records, if they existed."). Specifically, the Navy defined the public interest as whether the information "would contribute significantly to public understanding of the operations or activities *of the government*," and it concluded that the records, if they existed, "would shed light only on the alleged activities of an *individual military member or members*, and not the Navy or Marine Corps as a whole," such that "the inner workings of the Department of the Navy would [not] be better understood through . . . disclosure." *Id.* at 4.

In August 2023, Raw Story brought this action challenging the Navy's *Glomar* response. ECF No. 1. In December 2023, the case was reassigned to the undersigned. Docket,

No. 23-CV-2514 (D.D.C. Dec. 14, 2023).   The parties have filed cross-motions for summary judgment, ECF Nos. 16, 18, which have been fully briefed, ECF Nos. 19, 21-23.

## II.   Legal Standard

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).   Congress nonetheless included nine exemptions to disclosure that "are intended to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (internal quotation marks omitted) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)).

In certain circumstances, when faced with a FOIA request, an agency "may refuse to confirm or deny the existence of [responsive] records." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. Cent. Intel. Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).   A response of this kind is commonly referred to as a *Glomar* response, and it "is valid 'if the fact of the existence or nonexistence of agency records falls within a FOIA exemption.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374).

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).   At summary judgment, the agency "bears the burden [of] sustain[ing] a *Glomar* response." *Knight First Amend. Inst. v. Cent. Intel. Agency*, 11 F.4th 810, 813 (D.C. Cir. 2021)).   This burden can be met by the submission

of "agency affidavits explaining the basis for the response." *People for the Ethical Treatment of Animals*, 745 F.3d at 540.

When assessing the sufficiency of an affidavit justifying a *Glomar* response, "courts apply the general [FOIA] exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374. Therefore, "[a]ffidavits [supporting a *Glomar* response] must contain 'reasonable specificity of detail rather than merely conclusory statements' and cannot be 'called into question by contradictory evidence in the record.'" *People for the Ethical Treatment of Animals*, 745 F.3d at 540 (quoting *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012)). Where "an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. C.L. Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105).

"[W]hen a *Glomar* response touches upon issues of national security—'a uniquely executive purview'—courts must give agency decisions substantial deference." *Competitive Enter. Inst. v. Nat'l Sec. Agency*, 78 F. Supp. 3d 45, 53 (D.D.C. 2015) (quoting *Elec. Priv. Info. Ctr.*, 678 F.3d at 931); *see Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[B]oth the Supreme Court and this Court have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security."). "In the *Glomar* context . . . a reviewing court must 'take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent,

in the sense that it describes a potential future harm.'" *Gov't Accountability Project v. Cent. Intel. Agency*, 548 F. Supp. 3d 140, 149 (D.D.C. 2021) (second alteration in original) (quoting *Halperin v. Cent. Intel. Agency*, 629 F.2d 144, 149 (D.C. Cir. 1980)).

### III.   Discussion

Defendants invoke FOIA Exemptions 1, 6, and 7(C) to justify their *Glomar* response.  ECF No. 16, 7-14.  In the alternative, they assert a categorical exemption—separate from their *Glomar* response—under Exemptions 6 and 7(C).  *Id.* at 16-21.  Raw Story counters that Defendants have construed its FOIA request too narrowly and that, even on their narrow construction, they cannot defend their *Glomar* response.  *See* ECF No. 18-1, at 7-8; ECF No. 23, at 1-3.  The court largely agrees with Raw Story.

### A.   The Scope of Raw Story's FOIA Request

As a preliminary matter, the parties disagree about the scope of Raw Story's FOIA request. Raw Story argues that the Navy is reading its FOIA request "too narrowly."  ECF No. 18-1, at 6. Relying on statements in Defendants' motion for summary judgment as well as their supporting declaration, Raw Story contends that Defendants view the FOIA request as "seek[ing] only records of [the] Navy's own investigation" into Mr. Duncan," when, in fact, "the request seeks records of *any* agency's investigation into Duncan, be it Navy's or [one by the Department of Justice ("DOJ")]."  *Id.* (emphasis added).  As an example, Raw Story points to Defendants' statement that disclosing the existence or non-existence of any responsive records "would tend to confirm or disprove that [NCIS] has an interest in, is investigating, or has investigated [Mr. Duncan]."  ECF No. 16, at 8; *accord* ECF No. 16-2 ¶ 36 ("[T]he very fact of the existence or non-existence of responsive records is classified because it would tend to confirm or disprove that NCIS has an interest in, is investigating, or has investigated the subject of the FOIA request.").  Defendants respond that Raw Story is challenging their characterization of the scope of the FOIA request "for

the first time in this litigation" and assert that Raw Story's "attempt to split the requested records into two distinct categories [regarding] a NCIS investigation or a Department of Justice investigation . . . is inappropriate."[1]  ECF No. 21, at 5.  However, Defendants also maintain that "NCIS's response would be proper under either interpretation."  *Id.*  The court concludes that Raw Story has the better of the argument.

Agencies need not expand their searches beyond "the four corners of the request," nor are they "required to divine a requester's intent."  *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)).  However, agencies do have a "duty to construe . . . FOIA request[s] liberally," *id.* (alterations in original) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), especially where such requests "'reasonably describe' the records requested," *id.* (quoting *Landmark Legal Found.*, 272 F. Supp. 2d at 64).

As noted, Raw Story seeks (1) "memoranda, emails, correspondence or other documents referencing classified materials found on the hard drive of Jordan Duncan following his arrest in or around Boise, Idaho on or about Oct. 20, 2020"; (2) "memoranda, emails, correspondence or other documents referencing an investigation into potential violations of 18 U.S.C. §§ 641, 793(e) and (g) through a review of devices seized from Mr. Duncan"; and (3) "confirmation that the investigation into potential violations of 18 U.S.C. §§ 641, 793(e) and (g) by Mr. Duncan is closed or remains open."  ECF No. 16-3, at 2.  The language of this request, read plainly, makes clear that

---

[1] Defendants' argument that Raw Story may not raise arguments that it did not rely on in the administrative proceedings, ECF No. 21, at 5, 18, is unavailing.  FOIA does not limit federal challenges to the withholding of records to the evidence and records presented during the administrative process.  *See generally* 5 U.S.C. § 552.  Indeed, arguments made in court often rely on evidence that was not presented during administrative proceedings.  *See, e.g.*, *Am. C.L. Union v. Cent. Intel. Agency.*, 710 F.3d 422, 429 (D.C. Cir. 2013) (finding a *Glomar* response improper based on information that was not presented during the administrative proceedings).

Raw Story is not limiting its request to records generated by the Navy, but is instead seeking any responsive records in the Navy's possession, regardless of which agency generated them. That is amply clear on the "the four corners" of Raw Story's FIOA request. *Am. Chemistry Council, Inc.*, 922 F. Supp. 2d at 62 (quoting *Landmark Legal Found.*, 272 F. Supp. 2d at 64).

Defendants appear to suggest that responsive DOJ documents in the Navy's possession may not count as "agency records" within the meaning of the FOIA statute. ECF No. 21, at 5-6. That is plainly not so. In *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), the Supreme Court explained that the term "agency records" is not limited to "materials generated internally" but includes records an agency "obtain[s]" and "control[s]." *Id.* at 144-45; *see Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013) (explaining the four-factor test in this Circuit for determining whether a record is within an agency's control). To the extent that Defendants have arguments about whether the Navy has obtained or controls responsive records in its possession that were generated by DOJ, that is not a basis for a *Glomar* response under the FOIA exemptions they have invoked.

Accordingly, the court understands Raw Story's FOIA request to cover any records "referencing an investigation" into certain offenses by Mr. Duncan, ECF No. 16-3, at 2, regardless of which agency generated the records. Should Defendants wish at a later juncture to advance an argument that DOJ documents within the Navy's control are not "agency records," they may do so. However, as it pertains to the motions before the court, Defendants cannot simultaneously issue a *Glomar* response and make an argument that is contingent on the nature of the records in question.

**B.   *Glomar* Response**

Because Defendants argue that their *Glomar* response is "proper under either interpretation" of Raw Story's FOIA request, ECF No. 21, at 5—that is, whether it pertains only

to records generated within the Navy or includes records of other agency investigations in the Navy's possession and control—the court will analyze Defendants' *Glomar* response as it applies to all documents in their possession, regardless of which agency generated them.

Defendants assert that their *Glomar* response under Exemption 1 is proper because "the fact of the existence or non-existence of records responsive to Plaintiff's FOIA request is classified." ECF No. 16-1 ¶ 53. They further argue that their *Glomar* response is proper under Exemptions 6 and 7(C) because "any responsive records . . . would tend to confirm or disprove that NCIS has an interest in, is investigating, or has investigated the third-party subject of the request." *Id.* The court addresses these arguments in turn.

### 1.    FOIA Exemption 1

FOIA Exemption 1 protects from disclosure "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13,526 provides that information may be classified only if "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, [and] . . . is able to identify or describe the damage." Exec. Order 13,526 § 1.1(4). Such information must pertain to certain topics, including "intelligence activities (including covert action), intelligence sources or methods," "foreign relations or foreign activities of the United States," and "vulnerabilities or capabilities of systems . . . projects, plans, or protection services relating to the national security." *Id.* §§ 1.4(c), (d), (g). The order further provides that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order." *Id.* § 3.6(a).

Because "national security is primarily the province of the Executive, [courts] decline to micromanage agency determinations [regarding which] information should remain secret" and "simply consider whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023).   Thus, "an agency's justification for invoking [a *Glomar* response supported by Exemption 1] is sufficient if it appears 'logical' or 'plausible,'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105), that (1) the fact of the existence of the records in question is itself actually and properly classified,  and (2) "disclosure [of the existence of responsive records] 'could reasonably be expected' to harm national security," *Knight First Amend. Inst.*, 11 F.4th at 818 (quoting Exec. Order 13,526 § 1.4).

### a.       Classification

Defendants have submitted a declaration from Karen Richman, the Senior Associate Counsel in the NCIS Government Information Sharing Office, to support their *Glomar* response. ECF No. 16-2 ¶ 1.  Ms. Richman asserts that a *Glomar* response "under FOIA Exemption 1 is justified in this case because, by the very terms of the FOIA request, [Raw Story] seeks records referencing 'classified materials,'" and therefore, "if any responsive records exist, the classification requirements of Executive Order 13526 have already been satisfied." *Id.* ¶ 31.  She adds that "the fact of the existence or non-existence of records responsive to [Raw Story]'s FOIA request is classified, because any responsive records . . . would pertain to classified materials being recovered from a third-party private citizen's possession and an investigation into that private person's potentially criminal handling of national defense information." *Id.* ¶ 33.  In response, Raw Story contends that Defendants have failed to produce evidence that the records—if they exist—are "either actually or properly classified" and are instead simply assuming that all records

referring to classified information are themselves actually and properly classified.  ECF No. 18-1, at 9-10.[2]

The court cannot accept Defendants' contention that a responsive record's mere reference to classified material means that the record itself is necessarily classified.  Consider, for example, a DOJ press release about a criminal case that appears on NCIS's own website.  U.S. Dep't of Justice, Office of Public Affairs, "Press Release: Naval Commander Pleads Guilty to Distributing Child Sexual Abuse Material and Retaining Classified National Defense Information" (Dec. 6, 2023).[3]  The press release details the number of classified documents at issue and their level of classification.  *Id.* (describing the contents of a recovered flash drive "that contained approximately 150 documents containing national defense information classified at the Secret level and 50 documents containing national defense information classified at the Confidential level").  As this press release shows, not every record that references an investigation into the potential misuse of classified materials is itself classified.  And nothing in Ms. Richman's affidavit suggests that this principle would not apply to the records Raw Story seeks, whether the records are a part of an NCIS investigation or a DOJ investigation.  *See generally* ECF No. 16-2.

Specifically, as it pertains to records in Defendants' possession regarding a possible NCIS investigation, Ms. Richman's declaration provides no information beyond her faulty contention that "the fact of the existence or non-existence of records responsive to [Raw Story]'s FOIA

---

[2] Raw Story also takes issue with the fact that Defendants did not raise Exemption 1 during the administrative proceedings, ECF No. 23, at 5-6, but a "defendant in a FOIA case may assert new exemptions at the federal district court . . . stage not previously asserted at the administrative level, even if the circumstances have not changed in the interim," *Kay v. Fed. Commc'ns Comm'n*, 867 F. Supp. 11, 22 (D.D.C. 1994) (quoting *Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988)).

[3] *Available at* https://perma.cc/L9HZ-JN4U; *see also* Naval Criminal Intelligence Service, Press Releases, https://perma.cc/J6DA-768C.

request is classified, because any responsive records . . . would pertain to classified materials," *id.* ¶ 33, to support the idea that the existence or non-existence of an NCIS investigation is itself actually classified.  A *Glomar* response under Exemption 1 cannot be sustained on the basis of such an explanation.

And as it pertains to DOJ's investigation into Mr. Duncan, DOJ has made public statements about it, which demonstrates that information about its existence is not classified.  *See* U.S. Attorney's Office, District of Idaho, "Press Release: Last of Five Defendants with Ties to White Supremacy and Who Were Charged with Targeting Idaho Energy Facilities Enters Guilty Plea" (June 25, 2024).[4]  Thus, while there may be an argument under Exemption 1 for withholding certain actually and properly classified documents in Defendants' possession related to a DOJ investigation, Exemption 1 does not provide a basis for a *Glomar* response refusing to confirm or deny the existence of a DOJ investigation.

### b.    National security

While Defendants have not made the requisite showing that the fact of the existence of responsive records is itself actually classified, given the deference owed to the executive on national security matters, the court still considers whether "disclosure 'could reasonably be expected' to harm national security."  *Knight First Amend. Inst.*, 11 F.4th at 818 (quoting Exec. Order 13,526 § 1.4).

A court must give the agency "substantial deference" when a *Glomar* response asserts national security concerns, *Competitive Enter. Inst.*, 78 F. Supp. 3d at 53, and it must weigh the fact that any "agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm," *Gov't Accountability Project*,

---

[4] *Available at* https://perma.cc/HQT3-KLQK.

548 F. Supp. 3d at 149 (quoting *Halperin*, 629 F.2d at 149).  However, this deference does not free agencies from the "burden [of] sustain[ing] a *Glomar* response," *Knight First Amend. Inst.*, 11 F.4th at 813, through the submission of specific, non-conclusory statements that are "'logical' or 'plausible,'" *Wolf*, 473 F.3d at 375 (quoting *Gardels*, 689 F.2d at 1105).

Defendants also fall short on invoking national security as a basis for their *Glomar* response.  *See* ECF No. 16, at 8-9; ECF No. 16-2 ¶ 33.  Ms. Richman's declaration offers less than one paragraph to substantiate Defendants' assertion that even acknowledging the existence of responsive records would constitute a threat to national security.  ECF No. 16-2 ¶ 33.  In it, she states that "[m]erely acknowledging" the existence or non-existence of an investigation "would interfere with NCIS's duties in protecting against foreign intelligence threats and providing counterintelligence services by potentially revealing specific, unacknowledged intelligence activities, sources, or methods, and therefore would reasonably be expected to harm national security and cause the very harm protectable under Exemption 1."  *Id.*  She further contends that adversaries of the United States "could use such information to better avoid detection and reveal facts about NCIS's counterintelligence services and defenses against foreign intelligence threats."  *Id.*  These statements strike the court as vague and conclusory statements that could apply to *any* NCIS investigation.  *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977) ("An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm.  It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA."); *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("[A]ffidavits will not suffice if the agency's claims are conclusory . . . or if they are too vague or sweeping.").

Accordingly, Defendants have not logically or plausibly asserted that responsive documents in their possession pertaining to Navy and DOJ investigations into Mr. Duncan are actually and properly classified, nor that acknowledging their very existence or non-existence would cause harm to national security. For these reasons, their *Glomar* response under Exemption 1 fails.

## 2.    FOIA Exemptions 6 and 7(C)

FOIA Exemption 6 permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Analysis of these two exemptions is overlapping, although Exemption 7(C) is "more protective of privacy than Exemption 6" and thus presents a lower bar for the government. *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 712, 718 n.5 (D.C. Cir. 2021).

"To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure 'would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). Where "no significant privacy interest is implicated (and if no other Exemption applies), FOIA demands disclosure." *Horner*, 879 F.2d at 874. If the court concludes that a substantial privacy interest is at stake, the court must then "balance the . . . privacy interest against the public interest in disclosure." *Elec. Priv. Info. Ctr.*,

14

18 F.4th at 718 (alteration in original) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004)).

"The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contribut[ing] significantly to public understanding of the operations or activities of the government." *Norton*, 309 F.3d at 33 (alteration in original) (internal quotation marks omitted) (first quoting *Fed. Lab. Rels. Auth.*, 510 U.S. at 495; then quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989)); *see Reps. Comm. for Freedom of the Press*, 489 U.S. at 773 (explaining that the focus of the public interest analysis is "the citizens' right to be informed about 'what their government is up to'"). The public interest includes an understanding of the manner in which the federal government "handle[s] the investigation and prosecution of crimes that undermine the very foundation of our government." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014).

### a.     Privacy interest

Defendants argue that their *Glomar* response is appropriate because confirmation of the existence or non-existence of records relating to an investigation of Mr. Duncan is itself information subject to FOIA Exemptions 6 and 7(C). ECF No. 16, at 9-14. They note that Raw Story neither "provide[s] a privacy waiver or proof of death in support of the FOIA request" nor "show[ed] that [Mr. Duncan] had been convicted of an offense pertaining to mishandling the classified information." ECF No. 16, at 12. Defendants further argue that because "[i]ndividuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation," *id.* (quoting *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1091), and "[m]embers of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a law enforcement agency," *id.*,

Mr. Duncan has a "considerable" privacy interest that would be implicated by the disclosure of the requested files, *id.* at 14.

In response, Raw Story asserts that Mr. Duncan's privacy interest is *de minimis* because an individual's interest in not being associated with an investigation "goes to zero if the investigation is already public knowledge," and Mr. Duncan has already been publicly associated with the DOJ investigation in public court filings and press statements.  ECF No. 18-1, at 14.  In Raw Story's view, "it is not plausible[] that disclosing [if DOJ reached out to the Navy while investigating Mr. Duncan] would cause Duncan any incremental privacy harm," nor would it "add . . . significant stigma."  *Id.*  As for the existence of any Navy investigation into Mr. Duncan, Raw Story agrees that Mr. Duncan has a greater than *de minimis* privacy interest in the acknowledgement of such an investigation; however, it maintains that this interest is "outweighed by the public's strong interest in understanding how the military is addressing extremism in its ranks," *id.* at 17.

Because the existence of the DOJ investigation is already public information, it is difficult to see how Mr. Duncan's privacy interests could be significantly impacted by Defendants' disclosure of records confirming what is already in the public domain.  *See Am. C.L. Union v. U.S. Dep't of Just.*, 750 F.3d 927, 932 (D.C. Cir. 2014).  This is especially the case because Mr. Duncan now stands convicted of charges stemming from the DOJ investigation.[5]  "[I]ndividuals who were either the subject of or involved in government *investigations* of criminal activity but never charged with a crime . . . [have] privacy interests [that] are strong in part because disclosure would

---

[5] The court may take judicial notice of "information posted on official public websites of government agencies."  *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).  *See* U.S. Attorney's Office, District of Idaho, "Press Release: Last of Five Defendants with Ties to White Supremacy and Who Were Charged with Targeting Idaho Energy Facilities Enters Guilty Plea," June 25, 2024, *available at* https://perma.cc/HQT3-KLQK.

*'reveal[ ] to the public* that the individual had been the subject of an . . . investigation.'" *Id.* (fifth and sixth alterations in original) (quoting *Baez v. U.S. Dep't of Just.*, 647 F.2d 1328, 1338 (D.C. Cir. 1980)).  But the "privacy interest in preventing disclosure is diminished, however, if the fact of someone's involvement in alleged criminal activity is already a matter of public record."  *Id.* When it comes to defendants who, like Mr. Duncan, "ha[ve] ultimately been convicted, disclosure 'would compromise more than a *de minimis* privacy interest, [but] it would not compromise much more.'"  *Id.* at 931 (second alteration in original) (quoting *Am. C.L. Union*, 655 F.3d at 12).  Thus, while an argument for withholding specific documents related to a DOJ investigation could be made under Exemptions 6 and 7(C), a *Glomar* response refusing to confirm or deny the existence of responsive records in Defendants' possession regarding a now-public DOJ investigation cannot be supported.[6]

As for a possible Navy investigation, the court agrees with the parties that Mr. Duncan has a greater-than-*de-minimis* privacy interest in the release of information that confirms the existence or non-existence of an investigation that has not been publicly acknowledged by Mr. Duncan or the Navy.  ECF No. 18-1, at 17; ECF No. 21, at 10.

### b.    Public interest

"[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its

---

[6] In their briefs, the parties debate the application of the official acknowledgement doctrine in this case.  *See, e.g.*, ECF No. 18-1, at 15-16; ECF No. 21, at 6-7, 9-10, 12-13; ECF No. 23, at 11-13.  That doctrine instructs that "when information has been 'officially acknowledged[]' [by an agency], its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon v. Cent. Intel. Agency*, 911 F.2d 755, 765 (D.C. Cir. 1990)).  Here, the court need not reach questions about what information has or has not been officially acknowledged by Defendants or DOJ because it finds that the asserted exemptions do not withstand judicial scrutiny.

statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1093 (alterations in original) (quoting *Fed. Lab. Rels. Auth.*, 510 U.S. at 497).  "That is, the relevant public interest is *not* to find out what [Mr. Duncan] himself was 'up to' but rather how the [Defendants] carried out their respective statutory duties to investigate and prosecute criminal conduct."  *Id.*

Defendants argue that Raw Story has failed to "assert any public interest in the disclosure of records, let alone a significant one," because its FOIA request "expressed a clear interest only in the third-party private citizen and his conduct" rather than information that would "contribut[e] significantly to public understanding of the operations or activities of the government."  ECF No. 16, at 13 (alteration in original) (quoting *Reps. Comm. for Freedom of the Press*, 489 U.S. at 773-75).  Raw Story disputes this characterization, arguing that there is "substantial public interest in revealing 'matters of substantive law enforcement policy,' including how agencies 'handle the investigation and prosecution of crimes that undermine the very foundation of our government'"— particularly investigations "related to classified information."  ECF No. 18-1, at 16 (quoting *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1093).  Raw Story further asserts than any privacy interests are "outweighed by the public's strong interest in understanding how the military is addressing extremism in its ranks," especially given revelations that "some [rioters at the Capitol on January 6, 2021] were active duty servicemembers and military veterans" and senior military leaders' acknowledgements that extremism in the military "is not an insignificant problem and has to be addressed."  *Id.* at 17-18.

The court agrees with Raw Story that there is substantial public interest in the requested records.  The D.C. Circuit has instructed that "'[m]atters of substantive law enforcement policy are properly the subject of public concern[]' . . . [and pose] a *significant public interest* to be

weighed." *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1095 (emphasis added) (quoting *Am. C.L. Union*, 655 F.3d at 14).  Here, "disclosure of the requested records would likely reveal a great deal about law enforcement policy," *id.* at 1093, including how Defendants handle investigations related to the mishandling of classified information and how the "military is addressing extremism in its ranks."  ECF No. 18-1, at 17.  Thus, disclosure would offer the public visibility into Defendants' "performance of [their] statutory duties" and would further "let citizens know 'what their government is up to.'"  *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1093 (quoting *Fed. Lab. Rels. Auth.*, 510 U.S. at 497).

### c.    Balancing the privacy interest and the public interest

After balancing Mr. Duncan's privacy interest against the public's interest in knowing how DOJ and the Navy are investigating the mishandling of classified information and extremism in the military's ranks, the court finds that Mr. Duncan's privacy interest is outweighed.

Mr. Duncan's privacy interest in the confirmation of the existence or nonexistence of the already-public DOJ investigation is "more than a *de minimis* privacy interest," but not "much more," because it has already resulted in a public—and indeed, publicized—conviction.  *Am. C.L. Union*, 750 F.3d at 931 (quoting *Am. C.L. Union*, 655 F.3d at 12).  This diminished privacy interest therefore cannot overcome the "significant public interest" in disclosures related to "[m]atters of substantive law enforcement policy."  *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1095 (quoting *Am. C.L. Union*, 655 F.3d at 14).

Mr. Duncan's privacy interest in the disclosure of the existence or nonexistence of a Navy investigation is comparatively stronger.  However, it is Defendants' "burden to sustain a *Glomar* response," *Knight First Amend. Inst.*, 11 F.4th at 813, through "[a]ffidavits [that] contain 'reasonable specificity of detail rather than merely conclusory statements,'" *People for the Ethical Treatment of Animals*, 745 F.3d at 540 (quoting *Elec. Priv. Info. Ctr.*, 678 F.3d at 931).

Defendants' declarant, Ms. Richman, correctly acknowledges that "members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a criminal law enforcement agency," ECF No. 16-2 ¶ 21, but she fails to explain the extent to which Mr. Duncan would be additionally stigmatized by a Navy investigation given the pre-existing public scrutiny of his previous investigation and conviction.  The vague and conclusory statements offered regarding Mr. Duncan's privacy interests cannot sustain a *Glomar* response against the "weighty public interest" in "she[dding] light on [Defendants'] performance of [their] statutory duties." *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1093 (quoting *Fed. Lab. Rels. Auth.*, 510 U.S. at 497).

### C.    Categorical Exemption

Independent of their *Glomar* argument, Defendants assert that they may categorically withhold *any* records responsive to Raw Story's FOIA request under Exemptions 6 and 7(C).  ECF No. 16, at 16-21.  A categorical approach to redactions or withholdings is permissible under FOIA when "the FOIA litigation process threatens to reveal 'the very information the agency hopes to protect.'" *Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015) (quoting *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1088).  However, an agency must "justify its withholdings and redactions 'category-of-document by category-of-document,'" and "its definitions of relevant categories [must be] sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied."  *Id.* at 1149-50 (quoting *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994)).  The construction of a categorical exemption must "characteristically support[] an inference that the statutory requirements for [the] exemption are satisfied."  *Id.* (first alteration in original) (quoting *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1088).

Defendants' asserted categorical exemption to "all responsive record[s]," ECF No. 16, at 16; ECF No. 21, at 13, in their possession is clearly not "sufficiently distinct" for the "court to

determine whether [Exemptions 6 and 7(C)] are properly applied." *Prison Legal News*, 787 F.3d at 1150 (quoting *Gallant*, 26 F.3d at 173). Indeed, the court does not understand how Defendants can claim a categorical exemption for records it has not yet searched for and identified. Instead, now that the court has dispensed with Defendants' *Glomar* response, Defendants must acknowledge the existence of responsive records, review them, and offer evidence that the records fall into a category covered by FOIA Exemptions 6 and 7(C). Such a showing need not necessarily reveal the specifics of responsive documents, but it must suffice to convince the court that a categorical exemption is appropriate. *See Am. C.L. Union v. Cent. Intel. Agency*, 710 F.3d 422, 434 (D.C. Cir. 2013) (explaining the types of actions the agency may take "once [it] *acknowledges that it has some responsive documents*" (emphasis added)).

The court is puzzled by Defendants' reliance on *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), to support their assertion that they may categorically withhold *all* documents related to investigations of Mr. Duncan. ECF No. 16, at 17; ECF No. 21, at 17. While the *SafeCard* Court permitted limited "redaction of the names and identifying information of private citizens mentioned in law enforcement files, [the Court did] not permit an agency 'to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address.'" *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1094 (quoting *Nation Mag.*, 71 F.3d at 896); *see Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000) (holding that "investigative

details" is "a category presumably distinct from, and potentially far broader than" the kind of personal information at issue in *SafeCard*).[7]

Upon review of the requested documents, Defendants may again attempt to assert a categorical response, if one is warranted. But it may not disguise a *Glomar* response in the costume of a categorial exemption.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 16, is **DENIED** and Raw Story's Motion for Summary Judgment, ECF No. 18, is **GRANTED**. The parties are directed to file a joint status report proposing next steps in this matter on or before October 15, 2024.

**SO ORDERED.**

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date:   September 30, 2024

---

[7] The court finds the other cases on which Defendants rely, ECF No. 16, at 20-24; ECF No. 21, at 15-16, similarly unavailing because each dealt with a specific class of records that the agency deemed could be categorically withheld. *See, e.g.*, *Graff v. FBI*, 822 F. Supp. 2d 23, 26, 34 (D.D.C. 2011) (allowing a categorial exemption when the requester sought "files regarding the investigation, capture, and prosecution" of an individual). Here, Raw Story's request for records "referencing classified materials found on" Mr. Duncan's hard drive will not necessarily yield *only* records covered by Exemption 7(C) such that a pre-search invocation of a categorical exemption is warranted.